**R.E. ABBOTT, et al., Plaintiffs,**

v.

**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Defendant.**

**Court No. 81–1–00028.**

United States Court of International Trade.

Oct. 11, 1984.

Bruce M. Frey, Marion, Ind., for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Sheila N. Ziff, Washington, D.C., on brief), for defendant.

RE, Chief Judge:

Plaintiffs, on behalf of the former employees at the Dana Corporation's Marion, Indiana plant (Marion plant), challenge a determination of the Secretary of Labor denying certification of eligibility for trade adjustment assistance benefits under the Trade Act of 1974. 19 U.S.C. §§ 2101–2487 (1982).

The Secretary's denial is part of a multiple determination on the petition for certification filed by the Marion plant employees, in which only the employees in Departments 225 and 230, the departments that produced journal crosses and bearing races, were certified. *Abbott v. Donovan,* 6 CIT ——, 570 F.Supp. 41, 43, 44 (1983), (Abbott I), and *Abbott v. Donovan,* 7 CIT ——, 588 F.Supp. 1438 at 1439 (1984), (*Abbott II*). The Secretary denied certification to the remaining production workers at the plant, and to the service workers, who provided ancillary and support services to the various production departments, because they failed to satisfy the requirements set out in section 222(3) of the Trade Act of 1974, 19 U.S.C. § 2272(3) (1982). *Abbott II* 588 F.Supp. at 1439. Having been twice remanded, this action is before the Court for the third time.

The background of this action is detailed in *Abbott I* and *Abbott II,* and need not be restated. After careful review in *Abbott I,* this Court affirmed the Secretary's determination denying certification to production workers other than those in Departments 225 and 230. The court agreed with the Secretary that "only those production workers in Departments 225 and 230 were adversely affected by increased imports of like or directly competitive articles, as contemplated by section 222(3) of the Act." 570 F.Supp. at 43.

In *Abbott I,* the Secretary found that increased imports did not "contribute importantly" to the service workers separation from employment. The court remanded to the Secretary that part of the action relating to the service workers because his determination had not been "supported by any substantial evidence." 570 F.Supp. at 51. In addition, the court noted that the imposition of the Secretary's 25% standard would only be valid if the activities of the service workers were evenly distributed

throughout the plant, and provided that some production departments were not more "service intensive" than others. The Secretary was instructed to take these factors into account when making his redetermination.

Pursuant to the court's order in *Abbott I*, the Secretary conducted a further investigation of the service workers at the Marion plant, and submitted his redetermination to the court. The Secretary also submitted a supplemental administrative record. In his redetermination, once again, the Secretary concluded that increased imports did not contribute importantly to the service workers' separation from employment. 48 Fed. Reg. 48876, 48877 (1983).

The Secretary based this second denial of certification on new data which compared the relationship of hours worked by the employees of the twenty-five service departments to production Departments 225 and 230. The data revealed an uneven distribution of support services between Departments 225 and 230. The data, however, did not reveal the relationship of the service departments to the remaining production departments. Nor did the Secretary submit evidence showing that he considered the possibility that some production departments could be more service intensive than others.

Thus, in *Abbott II*, the court concluded that the denial of certification was still not supported by substantial evidence, and the action was again remanded to the Secretary. The court instructed the Secretary to produce comparative data showing the relationship of the activities of the service workers in the various service departments to *all* production departments, to determine which production departments, if any, were more service intensive than others.

Pursuant to the court's order in *Abbott II*, the Secretary has filed his latest determination, which reaffirms the two prior determinations, denying certification of eligibility for trade adjustment assistance benefits to the service workers at the Marion plant. Plaintiffs again contest the Secretary's determination, contending that the administrative record establishes the existence of an "important causal nexus" between increased imports of journal crosses and bearing races, and their separation from employment.

■ This Court is empowered to review a decision by the Secretary of Labor which denies certification of eligibility for trade adjustment assistance benefits to assure that the Secretary's determination is in accordance with law, and is supported by substantial evidence in the administrative record. Trade Act of 1974, § 284, 19 U.S.C. § 2395(b) (1982). Legislative enactments are seldom, if ever, neutral. They either promote or foster certain activities, policies or goals, or discourage or frustrate others. The pertinent statute which governs this case, The Trade Act of 1974, is no exception. Although fully cognizant of the benefactory animating purpose of the legislation, the court must nevertheless give effect to the plain language of the statute.

■ Pursuant to section 222 of the Act, in order to certify plaintiffs as eligible for trade adjustment assistance benefits, the Secretary of Labor's investigation must disclose:

(1) that a significant number or proportion of the workers in such workers' firms or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof *contributed importantly* to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2371(c) (emphasis added).

If any one of these three statutory conditions does not exist, the Secretary must deny certification.

Neither section 222, nor any other section of the adjustment assistance provisions of the Trade Act of 1974 expressly mentions service workers. The accompanying legislative history is similarly silent. Hence, the court must accord some deference to the interpretation of the statute by the agency charged with its administration. *Woodrum v. Donovan*, 5 CIT —, 564 F.Supp. 826, 829 (1983), *aff'd*, 737 F.2d 1575 (Fed.Cir.1984) (quoting *Federal Election Commission v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 31–32, 102 S.Ct. 38, 41–42, 70 L.Ed.2d 23 (1981)).

■ After a careful review of the original and supplemental administrative records, the briefs of the parties, and the Secretary's analysis of the service workers' relationship with the production departments at the Marion plant, this Court holds that the Secretary's most recent determination, denying certification of eligibility for trade adjustment assistance benefits to the service workers, is supported by substantial evidence, and is in accordance with law.

The record reveals that the service workers who provided ancillary and support services to the certified departments were tool makers, tool and cutter grinders, laborers, millwrights, electricians, machine repairers, stock chasers (fork-lift drivers), salvage inspectors, oilers, metal lab technicians, central storekeepers, inspectors, quality control inspectors, garage mechanics, and those employed in the shipping department. The record further discloses that, of the twenty-five service departments at the Marion plant, the two highest levels of service activity to Departments 225 and 230 came from millwrights and electricians. Millwrights spent 3.9% and 6.6% of their job activity supporting Departments 225 and 230, respectively. The range of millwright activity in all production departments was 2.6% to 6.6%. Electricians spent 5.0% and 10.0% of their job activity in Departments 225 and 230, respectively. The range of electrician activity in all production departments was 2.5% to 10.0%.

■ In *Abbott I*, this Court stated that it would defer to the Secretary's interpretation of the statute as long as it had a "rational basis in law," was not "inconsistent with the legislative purpose of the statute," and did not frustrate Congressional intent. 570 F.Supp. at 49 (citing *John V. Carr & Son, Inc. v. United States*, 69 Cust.Ct. 78, 86, 347 F.Supp. 1390, 1396 (1972), *aff'd*, 61 CCPA 52, 496 F.2d 1225 (1974), and *Woodrum v. Donovan*, 5 CIT —, 564 F.Supp. 826, 829 (1983), *aff'd*, 737 F.2d 1575 (Fed.Cir.1984)). The Secretary has interpreted section 222(3) of the Trade Act of 1974 to authorize trade adjustment assistance benefits for service workers only if they can establish an important causal nexus between increased imports and their separation from employment. *Abbott I*, 570 F.Supp. at 49. A causal nexus is established when service workers can demonstrate that a "substantial amount" of their activities are directly related to the production of the import-impacted article. *Id.*

When we speak of an important causal nexus we essentially refer to the term "contributed importantly," the causation standard found in the Trade Act of 1974. Section 222 of the Act provides that "the term 'contributed importantly' means a cause which is important but not necessarily more important than any other cause." The relevant legislative history also reveals that Congress intended that "a cause ... be significantly more than *de minimus* to have contributed importantly." S.Rep. No. 93–1298, 93rd Cong., 2d Sess. 133, *reprinted in* 1974 U.S.Code Cong. & Admin.News 7186, 7275. Thus, as a threshold substantial amount sufficient to establish an important causal nexus, the Secretary requires that at least 25% of the service workers activity be expended in service to the subdivision which produces the import-impacted article. *Id.* On this record the Court need not consider whether that standard is reasonable. The record clearly shows that the amount of service worker activity expended in support of certified departments at Dana Corporation was, in no instance, higher than 10%, a percentage which the Court

agrees is insufficient for purposes of certification.

Since the data establishes that the percentage of service worker activity related to production at the Marion plant was not "significantly more than *de minimus*," the Court holds that the Secretary's determination is both reasonable and consistent with the purpose of the Act. Unlike the data submitted in *Abbott II,* the court finds support for the Secretary's conclusion that the service workers did not, in the language of the statute, "contribute importantly" to the production of journal crosses and bearing races.

Therefore, it is the determination of the court that, as to the service workers who provide ancillary and support services to both certified and non-certified departments within the Marion plant, the Secretary's denial of certification of eligibility for trade adjustment assistance benefits is based on substantial evidence, and is in accordance with law. Accordingly, the Secretary's determination is affirmed, and the action is dismissed.