ILWU LOCAL 142, PLAINTIFF *v.* RAYMOND J. DONOVAN, SECRETARY OF LABOR, UNITED STATES OF AMERICA, DEFENDANT

Court No. 83–5–00779

Before RE, *Chief Judge.*

(Dated December 11, 1985).

King, Nakamura & Chun-Hoon (*James A. King*), for the plaintiff.
*Richard K. Willard,* Acting Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch (*Sheila N. Ziff*), for the defendant.

RE, *Chief Judge*: In this action, plaintiff, on behalf of former employees of Puna Sugar Company, seeks review of a final determination by the Secretary of Labor which denied certification of eligibilty for benefits under the worker adjustment assistance program of the Trade Act of 1974, tit. II, § § 221–249, 284, 19 U.S.C. § § 2271–2321, 2395 (1982). Specifically, the Secretary found that the workers were not eligible for assistance because an increase in imports did not contribute importantly to their separation from employment.

After reviewing the administrative record and the arguments of the parties, the Court holds that the determination of the Secretary is not supported by substantial evidence in the record, and is not in accordance with law. Therefore, the case is remanded to the Secretary for further consideration not inconsistent with this opinion.

On March 3, 1982, plaintiff, on behalf of employees of Puna Sugar Company, Ltd. of Keeau, Hawaii (Puna), filed a petition for certification of eligibility to apply for trade adjustment assistance benefits. Pursuant to section 221(a) of the Trade Act of 1974, 19 U.S.C.

§ 2271(a), the Office of Trade Adjustment Assistance (OTAA) of the Department of Labor[1] published a notice in the Federal Register stating that it had received the petition and instituted an investigation. 47 Fed. Reg. 12,402 (1982).

Section 222 of the Trade Act requires the Secretary to certify a group of workers as eligible to apply for trade adjustment assistance benefits if it is determined:

> (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
> (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and
> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

Trade Act of 1974 § 222, 19 U.S.C. § 2272 (Supp. I 1983).

In 1977, workers producing raw sugar at several plantations in Hawaii had been certified by the Secretary as eligible to apply for adjustment assistance. These 1977 certifications were based upon the Secretary's finding that "domestic prices of sugar have been merged with world sugar prices subjecting domestic prices to the competitive forces of an increased supply of sugar in a previously regulated market." 42 Fed. Reg. 30,453 (1977). Hence, the Secretary concluded that the "disparity in cost of production and net return sales of sugar," which resulted from the imports, had contributed importantly to the workers' separation from employment. *Id.*

In the present case, plaintiff contends that increased imports of raw sugar contributed importantly to the decline of sales and production by petitioner's employing firm, and to the eventual separation from employment of the workers. The Secretary denied plaintiff's petition on the grounds that it failed to satisfy subsection 3 of section 222. 19 U.S.C. § 2272(c).

### The Secretary of Labor's Determination

The OTAA's investigation disclosed that the Puna Sugar Company is one of five sugar companies operated by Amfac, Inc. Puna's workers were found to be engaged in the production of raw sugar. Raw sugar is derived from the juice of sugar cane, a perennial subtropical plant, which is grown and harvested by Puna. Puna's raw sugar is processed into refined sugar by C & H Sugar Company, a cooperative owned by the 15 Hawaiian sugar companies. All raw sugar produced in Hawaii is refined and marketed by C & H. Refined

---

[1] The Office of Trade Adjustment Assistance (OTAA) of the Department of Labor has been delegated the responsibility for investigating adjustment assistance eligibility. 29 C.F.R. § 90.2 (1984).

sugar is also made directly from sugar beets, which are annual, temperate-zone plants.

The OTAA performed a trade and industry analysis to ascertain the effect of imports on the domestic sugar industry. The record discloses that raw cane sugar accounts for 40 percent of the refined sugar domestically produced. Approximately one-third of the sugar consumed in the United States goes to household users, with the remainder consumed by industrial users. The principal industrial users include bakery, cereal, dairy product, and beverage producers. Production of raw cane and beet sugar decreased 1.5 percent from 1977 to 1981; but production increased 3.2 percent in 1981 compared to 1980. Similarly, Puna's production in 1981 increased by 1.8 percent. Despite its increased production, however, Puna's sales decreased in value 28.9 percent.

From 1980 to 1981, imports of cane and beet sugar increased 11.6 percent. Imports of refined sugar decreased almost 100 percent from 1977 to 1981, including a 39.7 percent drop from 1980 to 1981. Virtually all of the sugar imported into the United States is cane sugar. Moreover, although the import-to-production ratio for refined sugar never exceeded 1 percent in any year from 1977 to 1981, the import-to-production ratio for raw cane and beet sugar increased from 76 to 82.1 percent in 1981. In total, in 1981, the United States imported 51 percent of its sugar needs.

Raw sugar imports declined in 1982, in part because of two Presidential proclamations which affected the sugar industry, and because of duty and fee increases, imposed by the Department of Agriculture on April 1, 1982. The proclamations, signed by the President on May 5, 1982, raised the market stabilization price for imports of raw sugar, and proclaimed an emergency quota program which limited the amount of raw sugar that could be imported. *See* Proclamation Nos. 4940 and 4941, 47 Fed. Reg. 19,657, 19,661 (1982). The duty and fee increases were imposed because of an oversupply of sugar in the world market, which had caused the world price of sugar to fall below 10 percent per pound.

The OTAA's investigation also showed an increase in the domestic consumption of high fructose corn syrup (HFCS), a liquid sugar substitute that is widely used in the beverage industry. HFCS is not completely interchangeable with refined sugar, but can be substituted for refined sugar in certain applications. HFCS increased its share of the beverage sweetener market to 50 percent. HFCS was estimated to account for 25 to 30 percent of the total industrial sweetener usage. In 1981, apparent United States consumption of HFCS was found to be approximately 2.64 million tons.

Based on these findings, the Secretary concluded that increased imports did not contribute importantly in the separation of the sugar workers. Consequently, the workers were denied eligibility for assistance. The Secretary reasoned that there had been "a steady trend away from the consumption of refined sugar and toward

increased consumption of high fructose corn sweeteners. Declines in sugar consumption and production in the first six months of 1982 [were] more than offset by increases in production and consumption of high fructose corn sweeteners. This occurred notwithstanding substantial price reductions in effect since 1980 for refined sugar." 48 Fed. Reg. 14,072 (1983). The Secretary stated that "[i]n 1981, the refined sugar equivalent of more than 25 percent of total imports of raw sugar was exported * * *." *Id.*

The Secretary also concluded that the earlier 1977 certification of workers producing raw sugar in Hawaii did not "provide a precedent" for the Puna workers. 48 Fed. Reg. at 14,073. The earlier investigations, the Secretary noted, were made at a time "when consumption of HFCS, although increasing in significance, was only equal to 40 percent of current consumption levels * * *." *Id.* Hence, on March 24, 1983, on reconsideration, the Secretary issued a notice of negative determination for the Puna workers. 48 Fed. Reg. 14,072 (1983). Subsequently, pursuant to section 284(a) of the Trade Act of 1974, 19 U.S.C. § 2395(a) (1982), plaintiff commenced this action seeking judicial review of the Secretary's final negative determination.

### DISCUSSION

Section 284 of the Trade Act of 1974 empowers the Court of International Trade to review a determination by the Secretary of Labor that denies certification of eligibility for adjustment assistance to assure that the determination is supported by substantial evidence and is in accordance with law. 19 U.S.C. § 2395(c); *see Woodrum* v. *Donovan,* 5 CIT 191, 193, 564 F. Supp. 826, 828 (1983), *aff'd,* 737 F.2d 1575 (Fed. Cir. 1984). The findings of fact by the Secretary are conclusive if supported by substantial evidence. 19 U.S.C. § 2395(b). Of course, "the rulings made on the basis of those findings [must] be in accordance with the statute and not be arbitrary or capricious, and for this purpose the law requires a showing of reasoned analysis." *International Union* v. *Marshall,* 584 F.2d 390, 396 (D.C. Cir. 1978); *see also* Trade Act of 1974 § 223, 19 U.S.C. § 2273(c); *cf. Greater Boston Television Corp.* v. *FCC,* 444 F.2d 841, 851 (D.C. Cir. 1970), *cert. denied,* 403 U.S. 923 (1971).

Section 223 of the Trade Act, requires the Secretary, upon reaching his determination on a petition, to "publish a summary of the determination in the Federal Register *together with his reasons for making such a determination."* 19 U.S.C. § 2273(c) (emphasis added). It is a well-established principle of administrative law that when an agency "fails to delineate and make explicit the basis for conclusions, by articulating a rational connection between the facts found and the discretionary action taken, the court cannot decided, as it must, whether the [agency] has exercised a reasoned discretion consistent with legislative intent." *SCM Corp.* v. *United States,* 84 Cust. Ct. 227, 243, C.R.D. 80–2, 487 F. Supp. 96, 108 (1980); *see*

*Greater Boston Television Corp.* v. *FCC,* 444 F.2d 841, 851 (D.C. Cir. 1970), *cert. denied,* 403 U.S. 923 (1971); *cf.* Friendly, *"Some Kind of Hearing,"* 123 U. Pa. L. Rev. 1267, 1292 (1975).

Plaintiff urges that the Secretary's negative determination of eligibility should be reversed because the administrative record does not provide or indicate a rational basis for the Secretary's decision. Plaintiff's chief argument is that "the increased importation of raw sugar in the critical year 1981 * * * caused the price of all raw sugar in the U.S. to drop drastically, down to the world market or spot' price." Plaintiff also argues that the increased imports of raw sugar contributed importantly to the workers' separation, and that it "never contended * * * that imports of refined sugar impacted adversely on the Puna workers or their employer."

There is no dispute that the workers are engaged in employment related to the production of raw sugar, not refined sugar. The Secretary may certify the workers for adjustment assistance only if their separation was caused importantly by "increases of imports of articles like or directly competitive with articles produced by [the] workers' firm * * *." 19 U.S.C. § 2272(3). Section 222 of the Trade Act of 1974 defines the term "contributed importantly" as "a cause which is important but not necessarily more important than any other cause." *Id.* § 2272. The relevant legislative history shows that Congress intended that a cause be "significantly more than *de minimus* to have contributed importantly." S. Rep. No. 1298, 93d Cong., 2d Sess. 133, *reprinted in* 1974 U.S. Code Cong. & Ad. News 7186, 7275; *Abbott* v. *Donovan,* 8 CIT 237, 241, 596 F. Supp. 472, 475 (1984); *see United Glass & Ceramic Workers* v. *Marshall,* 584 F.2d 398, 400 (D.C. Cir. 1978).

The Secretary determined that increases of imports did not contribute importantly to the workers' separation from employment. Instead, the Secretary concluded that increased consumption of HFCS was an "important contributing factor to the overall decrease in the sale of refined sugar." *See* 48 Fed. Reg. at 14,073. Although the Secretary's finding that HFCS competed with refined sugar may be supported by substantial evidence in the record, the record does not show how HFCS affected the raw cane sugar market, in comparison with raw sugar imports. It is significant to note that from 1980 to 1981, domestic consumption of raw sugar increased from 10.4 to 11.11 million short tons. During the same period, apparent consumption of HFCS increased from approximately 2.2 to 2.6 million short tons. In 1981 apparent consumption of refined sugar was approximately 9.7 million short tons. In fact, HFCS is not completely interchangeable with refined sugar, since HFCS is a liquid, and not suitable for use where granulated sweeteners are required. In addition, the Secretary's "estimate" that HFCS accounted for between 25 and 30 percent of the total sweetener market, is not supported by the record. Hence, the Secretary's determination is flawed because, to the extent that it finds that HFCS negatively

impacted the *raw* cane sugar market, as opposed to the refined sugar market, it is not supported by substantial evidence. Furthermore, the Court has concluded that the Secretary has not adequately explained his reasons for the conclusion that increased consumption of HFCS is relevant to the workers' petition.

The record indicates that the increased imports of cheap, raw sugar significantly affected the domestic price of raw sugar. The record shows that more than half of the sugar consumed in this country is imported. Indeed, the OTAA found that imports are "heavily influenced" by world prices. At the time of the OTAA's investigation, the world price of raw sugar was "considerably below 10 cents per pound," and below the average cost of production of raw sugar in Hawaii. Finally, the record shows that the President, in response to the world price of sugar, proclaimed an emergency quota to limit sugar imports into the United States. Although the increase in consumption of HFCS may have affected the raw sugar market, there is no evidence in the record to support the Secretary's conclusion that increased HFCS use was a more important cause of the separation of the workers than was the increase in imports of raw sugar. *See* 19 U.S.C. § 2272. In light of the facts contained in the administrative record, it is the determination of the Court that the Secretary's determination is not supported by substantial evidence, and is not in accordance with law.

The Court has also concluded that the Secretary did not sufficiently explain why the earlier 1977 certification of workers producing raw cane sugar in Hawaii did not "provide a precedent." The administrative record indicates that the earlier certification was based on a finding that increases of raw sugar imports contributed importantly to the workers' separation from employment. It is a sound principle of administrative law that an administrative agency must either follow its existing precedents or provide a reasonable explanation for its deviation or noncompliance, *See, e.g., Secretary of Agriculture* v. *United States,* 347 U.S. 645, 653 (1954).

In this case, the Secretary found that the increased consumption of HFCS distinguished the earlier investigation. On the record presented, it is the determination of the Court that the Secretary has not explained why HFCS is relevant to the workers' petition for certification, or why the Secretary deviated from the earlier certification of workers producing raw sugar.

## CONCLUSION

It is the holding of the Court that the Secretary of Labor's denial of certification is not supported by substantial evidence, and is not in accordance with law.

Accordingly, the determination of the Secretary of Labor is vacated, and the case is remanded to the Secretary for a thorough inquiry, and for a redetermination of the certification of eligibility for trade adjustment assistance benefits. Since the Secretary may

wish to take additional evidence on matters pertaining to the workers' petition, it is noted that "the Secretary's latitude on remand extends to the full scope of his function under the Act." *International Union* v. *Marshall,* 584 F.2d 390, 396 (D.C. Cir. 1978). Finally, it is ordered that the Secretary shall certify the record and report to the Court the results of the further proceedings within 60 days from the date of the entry of this opinion and order.