**FORMER EMPLOYEES OF CSX OIL AND GAS CORP., Plaintiffs,**

**v.**

**UNITED STATES, Defendant.**

**No. 87–09–00978.**

United States Court of International Trade.

Aug. 3, 1989.

Mark J. DeLisle, pro se.

Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (M. Martha Ries), for defendant.

## OPINION

CARMAN, Judge:

Plaintiffs, former employees of CSX Oil & Gas Corporation (CSX) move this Court for judgment upon the agency record. Plaintiffs contend the Department of Labor's (Labor) negative determination of eligibility for certification for trade adjust-

ment assistance benefits and its negative determination for reconsideration[1] are not supported by substantial evidence on the record and are not in accordance with law under the Trade Act of 1974 as amended (the Trade Act). 19 U.S.C. § 2271–98 (1982 & Supp. V 1987).[2]

Plaintiffs request that these determinations be reversed and this Court order Labor to grant their petition for certification for eligibility for trade adjustment assistance. Labor opposes the motion and requests affirmance of its determinations and a judgment of dismissal.

On the basis of the papers submitted herein, the arguments of the parties, the relevant case law and an examination of the administrative record, the Court finds that Labor's determination is based on substantial evidence on the record and is in accordance with law. The determination of Labor is affirmed and the action is dismissed.

## BACKGROUND

Plaintiffs are employees of CSX's Western Region, located in the Denver, Colorado District Office. CSX produces crude oil and natural gas products throughout the southwest United States. Plaintiffs, workers in the district office, are employed as geologists (who monitor existing oil and gas reserves and explore for new reserves) and clerical support staff. Plaintiffs were separated from work on February 28, 1987 and filed a petition for adjustment assistance certification with Labor on April 1, 1987. Administrative Record at 2, 33 (hereinafter R.).

Labor initiated an investigation shortly thereafter which culminated in a negative determination of eligibility for certification for adjustment assistance. In that determination, Labor found that

---

1. The contested determinations are *Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance,* 52 Fed.Reg. 19,783, 19,-783–84 (May 27, 1987) (negative determination) and *CSX Oil and Gas Corp.; Negative Determination Regarding Application for Reconsideration,* 52 Fed.Reg. 27,074 (July 17, 1987) (negative determination for reconsideration).

2. The Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, §§ 1421–30, 102 Stat. 1107, 1242–44 (1988) renumbered 19 U.S.C. § 2272 as § 2272(a) and added § 2272(b) relating to the eligibility of oil and gas workers to apply for adjustment assistance benefits. These changes do not effect this determination.

Workers at the Denver District Office are engaged in employment supportive of CSX Oil and Gas Corporation's Production of crude oil and natural gas.

Layoffs at the Denver District Office were part of a corporate-wide cost reduction program implemented in April 1986. Employees at the Corporation's Oklahoma City, Oklahoma District Office were also affected by the cost reduction program, and were denied eligibility to apply for adjustment assistance on April 17, 1987 (TA–W–19,136).

Sales of crude oil and natural gas liquids produced by CSX Oil and Gas Corporation increased in quantity in 1986 compared with 1985.

United States imports of dry natural gas decreased absolutely and relative to domestic shipments in 1986 compared with 1985. The ratio of imports to domestic shipments was less than five percent in 1986.

R. 37; 52 Fed.Reg. at 19,783–84. Labor indicated its investigation revealed increased imports did not contribute importantly to worker separations at the firm under 19 U.S.C. § 2272(3). *Id.* The investigation relied upon by Labor in its determination consisted primarily of data gathered in the context of Labor's prior investigation on behalf of former employees of CSX's Oklahoma City, Oklahoma District Office (TA–W–19,136). *See* R. 19–28, 81–83.

By letter dated June 8, 1987, plaintiffs' *pro se* representative wrote Labor requesting reconsideration of the negative determination. R. 43–44. The letter stated:

We are puzzled by the fact that many local offices of oil and gas exploration companies have been awarded certification of their petition[s]. The Denver exploration office of CSX Oil & Gas does not differ from these other companies. The terminated workers of CSX Oil & Gas Corporation were engaged in exploration and drilling for crude oil, not production of crude oil and natural gas. There is a direct relationship between oil prices and exploration budgets.

While sales of crude oil and natural gas liquids produced by CSX increased in quantity in 1986 compared with 1985, CSX shows a 30% decline in revenues from these sales.... This decrease in revenues was due to sharp drops in prices. The price of oil and condensate fell from $32.61 per barrel in 1982 to $13.67 in 1986. This is directly related to the supply and the price of foreign OPEC crude oil.

The layoffs at the Denver office were part of a corporate wide cost reduction program implemented in April, 1986. This cost reduction program, caused by the collapse of oil and gas prices in 1986, was directed at domestic exploration and drilling....

*Id.* The letter further argued that "the increase of cheap oil imports contributed significantly to the termination of employees within the Denver (and Oklahoma City) exploration offices." *Id.* at 44. In support of this claim, plaintiffs submitted selected portions of CSX's 1986 Annual Report. R. 46–51.

On July 8, 1987, Labor issued its denial of plaintiffs' request for reconsideration. R. 55–58; 52 Fed.Reg. at 27,074–75. The denial of reconsideration stated substantially as follows:

Petitioner implies that the Department's investigation was off its mark when it investigated the production of crude oil and natural gas at CSX Oil & Gas instead of looking at the relationship between oil prices and exploration budgets. The Department investigated the entire CSX Corporation in order to determine whether the support workers at the Denver District Office could qualify for adjustment assistance. Under certain conditions, service or support workers may become eligible for benefits. In general, the conditions are that the reduction in demand for services must be determined to have originated at a production facility related to the workers' firm by ownership whose workers independently meet the statutory criteria for certification. However, these conditions do not exist for workers of the Denver District Office since there are no CSX Oil & Gas Corporation facilities where work-

ers are certified eligible to apply for adjustment assistance.

CSX is mainly a dry gas and natural gas liquids producer, a minor percentage of its production in 1986 was crude oil. Findings in the investigation show that production workers at CSX did not meet the worker group certification criteria of Section 222 of the Trade Act of 1974. CSX experienced an increase in sales and production of natural gas liquids and crude oil in 1986 compared to 1985. U.S. imports of dry natural gas decreased absolutely and relative to domestic shipments in 1986 compared to 1985.

With respect to petitioner's claim that workers at several Denver offices of other oil and gas exploration companies were certified eligible to apply for adjustment assistance and workers at CSX were not, the Department's records show that workers at other oil and gas exploration companies in the Denver area met the statutory worker group certification criteria of section 222 of the Trade Act. ... Worker separations at the Denver District Office were part of a corporate-wide cost reduction program implemented in April of 1986. Also, workers at the Oklahoma City District Office of CSX Oil & Gas were denied eligibility to apply for adjustment assistance on April 17, 1987....

Finally, decreased revenues and declining crude oil prices, in themselves, would not form a basis for certification. Revenues and prices are not criteria for a worker group certification under the Trade Act.

R. 55–58; 52 Fed.Reg. at 27,074–75. Thereafter plaintiffs initiated this action.

## CONTENTIONS OF THE PARTIES

■ In their brief in support of judgment upon the agency record, plaintiffs contest both factual and legal conclusions of Labor.[3] Generally, plaintiffs claim Labor's determination that no increase of imports contributed importantly to the workers' separations is based upon insufficient data. In particular, plaintiffs contest Labor's failure to investigate CSX's Western Region specifically. Plaintiffs contend labor erred by comparing quantity of sales instead of value of sales. Plaintiffs also contest Labor's conclusion that the separations were caused by a corporate-wide cost reduction program, not increased imports. Lastly, plaintiffs claim Labor improperly determined that plaintiffs were support workers not engaged in production of an article for purposes of eligibility certification. Labor counters that its determination is based upon substantial evidence on the record, is in accordance with law and represents a reasonable exercise of its discretion.

## STANDARD OF REVIEW

Section 284 of the Trade Act of 1974 empowers the Court of International Trade to review a negative determination by the Secretary of Labor denying certification of eligibility for adjustment assistance. The statute provides in part as follows:

[t]he findings of fact by the Secretary of Labor ..., if supported by substantial evidence, shall be conclusive; but the court, for good cause shown, may remand the case to [the] Secretary to take further evidence and [the] Secretary may thereupon make new or modified findings of fact.... Such new or modified findings of fact shall likewise be conclusive if supported by substantial evidence.

19 U.S.C. § 2395(b) (1982). Substantial evidence has been held to be more than a "mere scintilla," but sufficient evidence to reasonably support a conclusion. *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986) (and cases cited therein), *aff'd,* 810 F.2d

---

**3.** Plaintiffs' in their Brief refer to the administrative record and "other data" they claim "are very pertinent to this case and are easily verifiable." Plaintiffs' Brief at 1. Labor objects to any references to matters outside the ambit of the administrative record. Defendant's Memorandum In Opposition To Plaintiffs' Motion for

Judgment on the Administrative Record at 16 n. 7 and 19 n. 9 (Defendant's Memorandum). This Court notes that in consideration of this case it has confined its review solely to information contained within the administrative record as required by 19 U.S.C. § 2395(c) (1982).

1137 (Fed.Cir.1987). Additionally, the rulings made on the basis of the factual findings must "be in accordance with the statute and not be arbitrary or capricious, and for this purpose the law requires a showing of reasoned analysis." *International Union v. Marshall*, 584 F.2d 390, 396 n. 26 (D.C.Cir.1978); *Woodrum v. Donovan*, 5 CIT 191, 193, 564 F.Supp. 826, 828 (1983), *aff'd, sub nom. Woodrum v. United States*, 2 Fed.Cir. (T) 82, 737 F.2d 1575 (1984).

## DISCUSSION

In order to certify a group of workers as eligible for trade adjustment assistance benefits as provided for under section 222 of the Trade Act, the Secretary of Labor must determine:

> (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
>
> (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and
>
> (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

For purposes of paragraph (3), the term "contributed importantly" means a cause which is important, but not necessarily more important than any other cause. 19 U.S.C. § 2272. Labor concluded that criterion three above had not been satisfied. Labor found that no increases in imports of articles like or directly competitive with articles produced by CSX contributed importantly to plaintiffs' separations.

It is settled law that plaintiffs must meet all three requirements of section 222 of the Trade Act to be entitled to relief. "[F]ailure to satisfy any one of the three criteria of certification of workers for assistance will result in denial of adjustment assistance." *Former Employees of Bass Enter-*

*prises Production Co. v. United States*, 13 CIT ——, 706 F.Supp. 897, 900 (1989) (hereinafter *Bass*) (*citing Former Employees of Asarco's Amarillo Copper Refinery v. United States*, 11 CIT ——, 675 F.Supp. 647, 651 (1987) (hereinafter *Asarco*); *Abbott v. Donovan*, 8 CIT 237, 239, 596 F.Supp. 472, 474 (1984)).

Labor's negative determination of eligibility for adjustment assistance was based on its conclusion that there were no increased imports which contributed importantly to plaintiffs' job loss. Labor supported this conclusion with data which showed that CSX's sales of crude oil and natural gas liquids increased absolutely in 1986 compared with 1985. Labor's investigation determined that CSX experienced a slight decline in sales and production of dry natural gas. See Confidential Administrative Record at 26 (hereinafter Conf.R.). Consequently, Labor examined United States imports to determine if dry natural gas imports increased. The record shows that United States imports of dry natural gas decreased absolutely and relative to domestic shipments in 1986 compared with 1985. R. 37. Thus Labor found that there were no increased imports which contributed importantly to the workers' separations. Labor attributed the job loss to a corporate-wide cost reduction program.

The gravamen of plaintiffs' argument is that while CSX's sales in terms of *quantity* increased, its sales in terms of *value* decreased due to a world wide glut of crude oil which caused steep declines in world oil prices. *See* Plaintiffs' Brief at 1; Plaintiffs' Reply Brief at 2 ("Labor's definition of sales and production are obviously different than the plaintiff[s']."). The decrease in the price of crude oil resulted in substantially less revenue for CSX, forcing a cutback in exploration and drilling and plaintiffs' job loss. *See* R. 43–44. Thus, plaintiffs argue, increased crude oil imports caused the workers' separations.

While plaintiffs' job loss may well have been "caused," in a purely economic or lay sense, by cheap crude oil imports, the trade adjustment assistance law was not intended by Congress to provide assistance to all

workers who lose their jobs due in some measure to imports. *See Asarco*, 11 CIT at —, 675 F.Supp. at 650 (discussing the legislative history of Trade Act of 1974). "While it is [also] true that the assistance provisions are to be construed liberally ... the parameters of [the statute] cannot be ignored. The benefits of the Act are not universal and some hardships may result." *Pemberton v. Marshall*, 639 F.2d 798, 800 (D.C.Cir.1981) (citation omitted). This Court understands the unfortunate and difficult predicament plaintiffs' job loss may have imposed upon them, but this Court must implement the statute as intended by Congress.

Labor's reliance on company sales data showing increased production in terms of quantity as opposed to value has been upheld by this Court. In *Asarco* this Court affirmed Labor's finding that sales have not "decreased absolutely" under section 222(2) of the Trade Act when there is an increase in the quantity of articles sold by the firm or subdivision. *Asarco*, 11 CIT at —, 675 F.Supp. at 650; *see also, Bass*, 13 CIT at —, 706 F.Supp. at 902 (explaining *Asarco* ). Labor argues that this interpretation should apply to section 222(3) of the Trade Act as that section "incorporates the requirement stated in subsection 222(2) that there be an absolute decline in sales or production." Defendant's Memorandum at 22 n. 12. This Court is in agreement with Labor's argument here, as a plain reading of the statute supports Labor's position.

In evaluating Labor's claim on the merits, this Court "must accord substantial weight to an agency's interpretation [of] a statute it administers," provided it is reasonable. *Kelley v. Secretary United States Dep't of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987); *Asarco*, 11 CIT at —, 675 F.Supp. at 649; *Bass*, 13 CIT at —, 706 F.Supp. at 902.

▪ In this case, Labor's determination that increased imports did not cause CSX's decline in sales of dry natural gas was reasonable. Labor's investigation determined that CSX produced three products, crude oil, liquid natural gas and dry natural gas. Information submitted by CSX showed that production and sales of crude oil and liquid natural gas increased, hence imports of products like or directly competitive with crude oil and liquid natural gas did not importantly cause the worker separations. Conf.R. 26. Labor further found that while CSX's dry natural gas sales and production decreased slightly in quantity, so too did United States imports. *Id.;* R. 32. Thus, it was reasonable for Labor to conclude that there were no increased imports which contributed importantly to plaintiffs' separations. This conclusion is bolstered by substantial evidence in the record that the cause of the worker layoffs was a corporate-wide cost reduction program. R. 43, 51 and 54.[4]

**4.** It might be argued that *Bass*, decided after briefing in this case, requires Labor to cumulate oil and gas sales and production data on the basis of value. This Court disagrees with this reading of *Bass.*

In *Bass*, this Court found unreasonable Labor's determination that sales or production of the firm or subdivision increased for purposes of section 222(2) when Labor based its conclusion on data showing the increased production of only one of two important articles produced by the firm where the workers produced both articles.

Labor's investigation in *Bass* found that Bass was primarily a crude oil producer with natural gas accounting for an "important" portion of their total production. The crude oil and natural gas were produced simultaneously from the same wells. Data showed that Bass increased sales and production of crude oil over the period examined when measured in quantity. The record also showed that Labor failed to examine data relating to Bass' production of natural gas. From this data showing increased production and sales of crude oil, Labor concluded that it need not conduct a further investigation, since, in its view, the statutory criteria could not be met.

The Court in *Bass* disagreed, finding that Labor's interpretation was unreasonable. The Court stated: "The statute does not permit Labor to deny benefits upon determining that the quantity of sales or production of only one of two important and related products has not decreased absolutely where the petitioning workers are producing both products." 13 CIT —, 706 F.Supp. at 902. The Court ordered Labor to examine natural gas production and employ a reasonable methodology for comparing production of natural gas (measured in thousand cubic feet) with crude oil (measured in terms of barrels) which the Court could review. The Court noted that "Labor *may* employ a common denominator (e.g. value)," or some

 It was also reasonable for Labor to forego gathering additional information from the Western Region since it had enough data to reasonably determine that the workers' separations did not result from increased imports. It is well established that while Labor has a duty to investigate, "the nature and extent of the investigation are matters resting properly within the sound discretion of the administrative officials." *Cherlin v. Donovan*, 7 CIT 158, 162, 585 F.Supp. 644, 647 (1984); *Woodrum v. Donovan*, 4 CIT 46, 51, 544 F.Supp. 202, 205 (1982). This Court must give substantial deference to the method chosen by the agency to fulfill its statutory responsibility. *See Kelley*, 812 F.2d at 1380. The rationale underlying this rule has been aptly stated.

> Methodological flexibility is critical if the Secretary [of Labor] is to discharge his official responsibility under the worker adjustment provisions of the Trade Act. Consequently, this court must show substantial deference to the agency's chosen technique, only remanding a case if that technique is so marred that the Secretary's finding is arbitrary or of such a nature that it could not be based on 'substantial evidence.'

*United Glass & Ceramic Workers of North America v. Marshall*, 584 F.2d 398, 404–05 (D.C.Cir.1978) (footnote omitted); *see also, Abbott v. Donovan*, 6 CIT 92, 97, 570 F.Supp. 41, 47 (1983).

This Court is satisfied that it was reasonable for Labor to forego a more particularized investigation of sales and production of CSX's Western Region. Labor already had before it sufficient current and relevant information establishing sales and production levels for CSX which it had obtained in its investigation on behalf of former employees of CSX's Oklahoma City District Office one month earlier. As shown above, this information was sufficient for Labor to determine that plaintiffs

were not eligible for relief under section 222(3) of the Trade Act. Thus, it was entirely reasonable for Labor to end the investigation at that point.

Since this Court has upheld Labor's determination that increased imports did not contribute importantly to the plaintiffs' separations for purposes of 19 U.S.C. § 2272(3) the relief sought by plaintiffs must be denied. Accordingly, the Court need not address plaintiffs' other claims for relief. *See Bass*, 13 CIT at —, 706 F.Supp. at 900; *Abbott v. Donovan*, 8 CIT at 239, 596 F.Supp. at 474.

## CONCLUSION

This Court holds Labor's negative determination of eligibility for trade adjustment assistance and its refusal to reconsider are based upon substantial evidence on the record. Furthermore, the methodology employed by Labor was reasonable and in accordance with the relevant decisional law. Labor's determination is affirmed and this action is dismissed.

---

other reasonable methodology on remand. *Id.* (emphasis added).

It is clear to this Court that the Court in *Bass* did not read the statute as mandating compari-

sons on the basis of value, but merely reiterated the long standing rule that the agency employ a reasonable methodology.