**FORMER EMPLOYEES OF CHEVRON USA, INC., Plaintiffs,**

v.

**UNITED STATES SECRETARY OF LABOR, Defendant.**

**Slip Op. 98–171.**
**Court No. 96–08–01915.**

United States Court of International Trade.

Dec. 31, 1998.

**472**

Lillick & Charles (Harry A. Hagan), for plaintiffs.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Lucius B. Lau); Office of the Solicitor, U.S. Department of Labor (Gary Bernstecker), of counsel, for defendant.

### OPINION

GOLDBERG, District Judge.

This matter is before the Court on plaintiffs' USCIT Rule 56.1 motion for judgment upon the agency record. Plaintiffs are former employees of Chevron Overseas Petroleum. The Secretary of Labor ("Labor") denied plaintiffs' eligibility for trade adjustment assistance because plaintiffs were not involved in the domestic production of oil and gas. Plaintiffs contest that determination, asserting that the applicable statutory provisions do not require plaintiffs to be involved in domestic production. The Court has exclusive jurisdiction to review Labor's final determination pursuant to 28 U.S.C. § 1581(d)(1) (1994). The Court denies plaintiffs' motion.

### I.

### BACKGROUND

Plaintiffs are former employees of Chevron Overseas Petroleum, a division of Chevron USA, Inc. They were employed as geologists, geophysicists, and engineers in the New Ventures Business Unit ("NVBU") in San Ramon, California. In this capacity, they "engaged in the exploration and production of oil for Chevron's overseas operations." Br. in Supp. of Pls.' Mot. for J. Upon the Agency R. ("Pls.' Br."), at 1.

Plaintiffs were terminated by Chevron on April 19, 1995 "in response to the changing economic conditions in the oil industry." Pls.' Br., App. 2, at 16 (July 6, 1995 Notice of Termination). Following their termination, plaintiffs applied to the Department of Labor for trade adjustment assistance, pursuant to Subchapter II of the Trade Act of 1974 ("Trade Act"), 19 U.S.C. §§ 2251—2395 (1994). Labor denied plaintiffs' certification of eligibility for assistance on March 25, 1996. Negative Determination Regarding Eligibility to Apply for Worker Adjustment Assistance, TA–W–32,009. Plaintiffs' petition was again denied after reconsideration and consequently, plaintiffs initiated judicial review of the matter on August 12, 1996.

Initially, Labor requested a remand from this Court to clarify "[t]he link between the work performed by employees of the New Ventures Business Unit at the Chevron Overseas Petroleum division location in San Ramon and Chevron's domestic production of oil and gas." Supplemental Administrative Record, at 1. This Court granted the motion and directed Labor to submit a supplemental administrative record of its additional findings. See Remand Order of March 6, 1997. After concluding its post-remand investigation, Labor, on May 1, 1997, affirmed its denial of plaintiffs' certification of eligibility for trade adjustment assistance. Plaintiffs challenge Labor's remand determination, and ask this Court to enter, as a matter of law, judgment for plaintiffs.

### II.

### DISCUSSION

#### A. Standard of Review

This Court will sustain Labor's determination if it is supported by substantial evidence on the record and is otherwise in accordance with law. See 19 U.S.C. § 2395(b)-(c) (1994). Substantial evidence is defined as more than a "mere scintilla," and must reasonably support Labor's conclusion. See Former Employees of Boise Cascade Corp. v. United States Secretary of Labor, 15 CIT 116, 118 (1991).

In reviewing Labor's determination, this Court "must accord substantial weight to" Labor's interpretation of 19 U.S.C. § 2272, the provision delineating group eligibility requirements for trade adjustment assistance. *Kelley v. Secretary, United States Dep't of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987) (citing *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978) (according deference to an agency's interpretation of the statute it administers)); *see also Former Employees of CSX Oil and Gas Corp. v. United States*, 13 CIT 645, 650, 720 F.Supp. 1002, 1007 (1989) (quoting *Kelley* ); *Western Conference of Teamsters v. Brock*, 13 CIT 169, 181, 709 F.Supp. 1159, 1169 (1989) (according substantial weight to Secretary's interpretation as long as it is reasonable). "The Court must uphold the Secretary's interpretation of the Trade Act, provided it is sufficiently reasonable and does not contravene clearly discernible legislative intent." *Bunker Limited Partnership v. Brock*, 12 CIT 420, 422, 687 F.Supp. 644, 646 (1988) (internal quotations and citation omitted).

### B. *Labor's Decision to Deny Plaintiffs Trade Adjustment Assistance was Based on Substantial Evidence and in Accordance with Law*

In its remand determination, Labor denied certification to plaintiffs for adjustment assistance because plaintiffs failed to satisfy all of the statutory requirements upon which certification is conditioned. Importantly, Section 222(a)(3) of the Trade Act requires "that increases of imports of articles like or direct-ly competitive with articles produced by ... [petitioning workers] contributed importantly to" the workers' separation.[1] 19 U.S.C. § 2272(a)(3) (1994). According to Labor, plaintiffs failed to satisfy this requirement because they were not involved in the domestic production of oil and gas. Instead, plaintiffs "provide[d] drilling, earth science, engineering and information technology support and services to ... overseas based Business Units." Chevron Overseas Petroleum, Inc., San Ramon, California; Notice of Negative Determination on Reconsideration on Remand, 62 Fed.Reg. 25661 (1997).

Plaintiffs do not dispute this finding, and in fact acknowledge that they "were engaged in overseas rather than domestic production of oil and gas." Pls.' Reply Br., at 4. Plaintiffs assert, however, that Section 222(a)(3) of the Trade Act "does not require that the workers be engaged in *domestic production* of articles." Pls.' Br., at 1. According to plaintiffs, Section 222(a)(3) requires only that plaintiffs work for a domestic company that produces articles competitive with imports, not that the workers themselves engage in domestic production. *See id.* The issue before this Court, then, is whether Labor's denial of certification to plaintiffs because they had no connection to domestic production was supported by substantial evidence and in accordance with law.[2]

To be eligible for trade adjustment assistance, plaintiffs must satisfy *all* of the statutory requirements upon which certification is conditioned. *See Former Employees of Shaw Pipe, Inc. v. U.S. Secretary of La-*

---

1. In order to certify that workers are eligible for trade adjustment assistance, the Secretary of Labor must determine:

   (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

   (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

   (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272(a) (1994).

2. Plaintiffs also urge this Court to find that Labor erred in denying plaintiffs certification of eligibility for adjustment assistance because it classified plaintiffs as "service workers." Pls.' Br., at 13. In its remand determination, Labor does refer to NVBU as "a services based organization." *See* 62 Fed.Reg. at 25661. Labor's negative determination, however, is premised, not on this, but on the fact that plaintiffs did not contribute at all to Chevron's domestic production of oil and gas and thus failed to fulfill the requirement of Section 222(a)(3). Because plaintiffs' failure to meet the statutory requirements for certification is sufficient to support Labor's negative determination, this Court need not address the issue of whether plaintiffs are "service workers."

*bor*, 21 CIT ——, ——, 988 F.Supp. 588, 593 (1997); *see also Former Employees of Bass Enters. Prod. Co.*, 13 CIT 68, 70, 706 F.Supp. 897, 900 (1989) ("[F]ailure to satisfy any one of the three criteria for certification of workers for assistance will result in denial of adjustment assistance."); *Abbott v. Donovan*, 8 CIT 237, 239, 596 F.Supp. 472, 474 (1984) ("If any of these three statutory conditions does not exist, the Secretary must deny certification."). In its remand determination, Labor states that plaintiffs failed to satisfy "criterion (3) of the group eligibility requirements of Section 222." 62 Fed.Reg. at 25661.

Section 222(a)(3) of the Trade Act, codified as 19 U.S.C. § 2272(a)(3), requires plaintiffs to demonstrate that "increases of imports of articles like or directly competitive with articles produced by such workers[ ] . . . contributed importantly" to plaintiffs' separation. 19 U.S.C. § 2272(a)(3). As defined by statute, "the term 'contributed importantly' means a cause which is important but not necessarily more important than any other cause." 19 U.S.C. § 2272(b)(1).

■ In order to satisfy the "contributed importantly" test, plaintiffs must show a "direct and substantial relationship" between the increased imports of oil into the United States and plaintiffs' termination. *See Finkel v. Donovan*, 9 CIT 374, 382, 614 F.Supp. 1245, 1251 (1985); *see also Abbott*, 8 CIT at 240, 596 F.Supp. at 475 (noting that Labor will authorize benefits only if there is a causal nexus between increased imports and the workers' separation); *United Steelworkers of America v. United States Secretary of Labor*, 17 CIT 1188, 1191 (1993) (explaining that the "contributed importantly" test will only be satisfied if there is a "direct and substantial" relationship to increased imports).

In its remand determination, Labor concluded that plaintiffs failed to establish a direct and substantial relationship between increased imports of oil into the United States and their termination from Chevron because "[n]one of the work performed by employees of New Ventures Business Unit . . . in San Ramon supported Chevron's do-

mestic production of oil and gas." 62 Fed. Reg. at 25661. As noted earlier, plaintiffs acknowledge that they supported overseas exploration and drilling only, and there is substantial evidence on the record to support this fact.[3]

■ Because plaintiffs were not involved in domestic production, it was reasonable for Labor to conclude that Plaintiffs did not satisfy the "contributed importantly" test. The dictionary definition of an import is "to bring in from the outside," or "to bring (goods) from another country or countries, especially for purposes of sale." Webster's New World Dictionary 678 (3d ed.1988). Thus, the use of the term "imports" in 19 U.S.C. § 2272(a)(3) necessarily means goods brought *into* the United States. Because plaintiffs supported overseas production, oil produced overseas as a result of their work was itself an *import* when brought into the United States. Plaintiffs cannot establish a direct and substantial relationship between increased imports of oil into the United States and their termination from Chevron then, because plaintiffs were themselves engaged in the production of imports. And the purpose of the Trade Act is to protect workers *injured by* imports, not to protect workers, like plaintiffs, who themselves *aided in the production of* imports. *See* S.Rep. No. 93–1298, at 3 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin. 7187 (enumerating the purposes of the Trade Act of 1974, including: "To provide greater access and more effective delivery of *import relief* to industries, firms and workers which are seriously injured or threatened with serious *injury by increased imports*.") (emphasis added); *see also Bunker Ltd. Partnership*, 12 CIT at 423, 687 F.Supp. at 647 ("Congress described adjustment assistance in the context of providing relief to workers who had been injured as a result of import competition."). Thus, Labor's interpretation of 19 U.S.C. § 2272(a)(3) was reasonable, and this Court "will not substitute its own judgment when the Secretary has made a reasonable interpretation which, unfortunately, results in plaintiff's ineligibility to apply for adjust-

---

**3.** Defendant has submitted several confidential documents that demonstrate plaintiffs supported overseas production only. Since plaintiffs ac-

knowledge this fact, the Court does not feel compelled to quote the documents here.

ment assistance." *Bunker Ltd. Partnership,* 12 CIT at 424, 687 F.Supp. at 648.

It is true that Congress explicitly included workers engaged in exploration or drilling for oil or gas as eligible for coverage under the trade adjustment assistance program. *See* 19 U.S.C. § 2272(b)(2)(A) (defining those involved in exploration or drilling for oil as "producing" oil); *see also Former Employees of Parallel Petroleum Corp. v. United States Secretary of Labor,* 14 CIT 114, 115 n. 1, 731 F.Supp. 524, 525 n. 1 (1990) (discussing the history behind 19 U.S.C. § 2272(b)(2)(A)). And Congress relaxed the "contributed importantly" standard in 1974 so that more workers could qualify for benefits. *See* S.Rep. No. 93–1298, at 133 (1974), *reprinted in* 1974 U.S.Code Cong. & Admin. 7275. Yet, these expansions of the trade adjustment assistance program do not exempt plaintiffs from the causation requirement of 19 U.S.C. § 2272(a)(3). Having failed to satisfy this requirement, Labor was correct in denying plaintiffs' certification for trade adjustment assistance.

Moreover, Labor's determination is not inconsistent with the Court's prior holdings. The case of *Moraldo v. United States Secretary of Labor,* 19 CIT 1429 (1995), is squarely on point with the case at bar.[4] In that case, although the plaintiffs worked in New York, "they provided engineering support for manufacturing done in Canada and Latin America." *Id.* at 1429. The court upheld Labor's denial of certification for adjustment assistance because "workers must have contributed to the domestic production of import-impacted articles in order to qualify for trade adjustment assistance." *Id.* at 1430. Similarly, in this case, although plaintiffs worked in San Ramon, California, they sup-

ported Chevron's overseas, not domestic, production of gas and oil.

Also, in *Bunker Limited Partnership,* the court considered whether the Secretary of Labor could deny certification to workers who did "not sell or compete in the domestic market." 12 CIT at 421, 687 F.Supp. at 646. Because the plaintiffs exported all of their product to Belgium, Labor "concluded that 'increases of imports' did not 'contribute importantly' to the worker separation." *Id.* The *Bunker* court agreed, and found that it was reasonable for Labor to conclude that a decrease in export sales lacked a direct and substantial relationship to increased imports. *See id.* at 423, 687 F.Supp. at 647. Similarly, as shown, plaintiffs did not contribute to production in the domestic market and instead supported Chevron's overseas production. Plaintiffs' termination thus lacks a direct and substantial relationship to increased imports of gas and oil into the United States.

### III.

### *CONCLUSION*

In sum, Labor's remand determination was based on a reasonable interpretation of the law, supported by substantial evidence, and not inconsistent with this Court's prior holdings. The Court will affirm the determination of the Secretary of Labor denying plaintiffs' certification of eligibility for trade adjustment assistance. An Order will be entered accordingly.

### *JUDGMENT ORDER*

Upon consideration of plaintiffs' motion for judgment upon the agency record, and upon consideration of all other papers, it is hereby

---

4. Plaintiffs dispute that this case has any precedential value because the plaintiffs in *Moraldo* were *pro se.* Regrettably, many, if not most, of the trade adjustment assistance cases that come before the Court are *pro se.* Plaintiffs contend that it would be "absurd" for the Court to "ascribe precedential value" to *Moraldo,* because "Mr. Moraldo would have been incapable of articulating or researching . . . any . . . legal issue." Pls.' Reply Br., at 2. The Court disagrees. Generally, courts accord a measure of leniency to pleadings submitted *pro se* so that all meritorious arguments are considered, however inartful the

draftsmanship. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (holding *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers"). Because a court will generally consider and develop any meritorious argument tabled in a pro se pleading, it does not follow that opinions for *pro se* cases hold no precedential value. This Court may, in its discretion, find persuasive its own prior opinions, even if they were litigated *pro se.* Moreover, the Court notes that plaintiffs, too, cite several cases that were argued pro se.

ORDERED that plaintiffs' motion is denied; and it is further

ORDERED that judgment be entered affirming defendant's denial of certification of eligibility for trade adjustment assistance to plaintiffs.

**SO ORDERED.**