FORMER EMPLOYEES OF VTC INC., PLAINTIFFS *v.*
ROBERT B. REICH, U.S. SECRETARY OF LABOR, DEFENDANT

Court No. 91–10–00719

(Decided December 30, 1993)

*Martha Crump pro se.*
*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Jeffrey M. Telep);* and Office of the Solicitor, U.S. Department of Labor *(Scott Glabman),* of counsel, for the defendant.

MEMORANDUM

AQUILINO, *Judge:* This action contests denial by the U.S. Department of Labor of certification of eligibility to apply for adjustment assistance under the Trade Act of 1974, as amended, *sub nom. Determinations Regarding Eligibility to Apply for Worker Adjustment Assistance; Negative Determinations; TA–W–25,789; VTC, Inc., Subsidiary of Control Data Corp., Bloomington, MN,* 56 Fed.Reg. 31,678 (July 11, 1991), and *VTC Inc., Subsidiary of Control Data Corp.; Bloomington, MN; Negative Determination Regarding Application for Reconsideration,* 56 Fed.Reg. 37,929 (Aug. 9, 1991).

I

The record developed in conjunction with those proceedings contains a petition for such assistance signed by three individuals[1], identifying themselves as involved in "assembly" at VTC Inc. who were separated from work on May 31, 1991. The petition alleged that they "manufac-ture[d]" computer circuits into packages and that, over the last several years, "more and more of the packages have been sent 'overseas' to be done cheaper"[2], thereby forcing the petitioners out of their jobs.

This petition caused the Office of Trade Adjustment Assistance, Employment and Training Administration of the Department of Labor to investigate eligibility to apply for certification pursuant to 19 U.S.C. ch. 12, part 2, subpart A. Section 2272 thereof provides:

**Group eligibility requirements; agricultural workers; oil and natural gas industry**

(a) The Secretary shall certify a group of workers * * * as eligible to apply for adjustment assistance under this part if he determines—

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports or articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

After investigating, the Department decided that the criteria of subparagraph (a)(3) for assistance had not been met upon the stated rationale that the evidence developed

revealed that employment and production declines at the subject plant resulted from the sale of the business to other domestic companies.

The investigation further revealed that projects assembled at the subject plant were highly classified and could only be assembled in the United States.[3]

Whereupon the Department concluded that "[i]ncreased imports did not contribute importantly to worker separations at the firm"[4] and therefore denied the petitioners certification of eligibility to apply for adjustment assistance.

Petitioner Crump requested reconsideration "based on additional information that was not disclosed * * * regarding the overseas produc-

---

[1] *See* Public Record ("PubRec"), p. 2.

[2] *Id.*

[3] *Id.* at 26.

[4] 56 Fed.Reg. at 31,678.

tion for VTC Inc."[5] Her request explained that in September 1990 the firm had split into three separate divisions, VTC Bipolar, VTC Cmos and the Assembly Department[6], and asserted that, due to

> VTC Bipolar's plan to have all of it[ ]s products assembled overseas for lower cost reasons, the Assembly Department was given a plant shut down notice, * * *. There were no plans to sell the Assembly Department to a domestic company.[7]

The petitioner also addressed the Department's position regarding allegedly highly classified projects which could only be assembled in the United States:

> Another issue that was deemed not to meet the criterion for number three [19 U.S.C. § 2272(a)(3)] was the assembly of highly classified projects that could only be assembled in the United States. Although some of the products assembled at VTC Inc. were in fact classified, the majority of the assembly was non classified. The existence of classified products did not come into effect until the last quarter of 1989.
>
> The assembly employees who assembled that classified work were transferred from the non classified work area and were told that when the "government contracts" were completed, they would return to the non classified assembly area.
>
> The vast majority of the assembly done at VTC Inc. was non classified work. Over a period of years, VTC Inc. increased it[ ]s exportation of this work overseas until the final decision was made by the new "VTC Bipolar" to send it all overseas.[8]

After further inquiry, the Department denied the request for reconsideration, stating that:

> Investigation findings show that Control Data disposed of VTC in three pieces—by selling VTC Bipolar in October 1990 and VTC Cmos in January 1991 and retaining only a small assembly and packaging operation for classified projects for Control Data. Other investigation findings show that since the last quarter of 1989, the vast majority of the assembly and packaging work was for classified projects which for national security reasons could only be assembled in the United States. Workers in the remaining small packaging unit were laid off in May 1991 because their customer chose not to remain in the classified semi-conductor business.[9]

In other words, upon reconsideration, the Department concluded anew that the criteria of 19 U.S.C. § 2272(a)(3) were not met. This action ensued.

---

[5] PubRec, p. 31.

[6] *See id.*

[7] *Id.*

[8] *Id.* at 32.

[9] 56 Fed. Reg. at 37,929.

## II

The plaintiffs have now filed a Motion for Judgment, which asserts:

The official record does not address the products previously assembled by the employee[ ]s of VTC Inc. that were transferred overseas to be built in the years preceding the Department closing in 1991, nor does it address the percentage of product still being assembled overseas for VTC Inc. at the time of the Department closing in May of 1991. The official record also does not address what size work force would VTC Inc. have been able to sustain in 1991 if the products were still being assembled by the employee[ ]s of VTC Inc. at the time the Government Contracts were lost. The official record also does not address what products were shipped overseas to be assembled at, or around the time of the Department shutdown, which had previously been assembled by the employee[ ]s of VTC Inc.

The official record is much to[o] vague on many of th[e] facts that are needed to make a[n] objective opinion on how the assembly employee[ ]s of VTC Inc. were adversely affected by the increase of imports by VTC Inc. itself. The assembly of Government Contracts at the time of the Department shut down in and of itself should not be the only or determining factor in concluding that the employee[ ]s of VTC Inc. were not adversely affected by increased imports, but instead it should have been taken into account what size work force would have been sustained by VTC Inc. had they not chosen to send products overseas that were previously manufactured by the employees of VTC Inc.[10]

## A

In reviewing the Department's findings and conclusions, this court must determine whether they are supported by substantial evidence on the record. *See* 19 U.S.C. § 2395(b). Substantial evidence has been held to be that which reasonably supports a conclusion. *E.g., Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd,* 810 F.2d 1137 (Fed.Cir. 1987).

After receiving the petition, the Department requested information from the parent corporation of VTC Inc. to help determine "whether increased imports have contributed importantly to actual or threatened decreases in employment and to decreases in sales or production at the petitioning workers' plant."[11] Based on the information provided, the Department issued its initial negative determination *supra.* Upon the request for reconsideration, the Department once again contacted the parent corporation to address points raised therein.[12] After obtaining a response, the Department denied the renewed request for relief upon the rationale recited above.

---

[10] Motion for Judgment, pp. 1–2.

[11] PubRec, p. 13.

[12] *See* Confidential Record, pp. 14–16, 34–36.

This court has reviewed the confidential version of the administrative record and finds that it supports the determination that, although the assembly department was primarily involved in nonclassified projects, plaintiffs' positions in that department were terminated as a result of the sale of business to other domestic companies and not because of increased imports.[13] That is, much of the confidential information in the record contradicts assertions in both the petition and the request for reconsideration. Instead, the record contains substantial evidence in support of the Department's negative determination. Hence, this court cannot conclude that it was unreasonable for the Department to forego attempting to gather additional information as to issues raised by the petitioner(s) in the light of the fact that its initial investigation and subsequent contact with the parent corporation of VTC provided enough data to determine that their separations were not the result of increased imports.

It is well-settled law that the nature and extent of an investigation are matters resting within the sound discretion of administrative officials. *E.g., Former Employees of CSX Oil and Gas Corp. v. United States,* 13 CIT 645, 651, 720 F.Supp. 1002, 1008 (1989). Furthermore, "this court must show substantial deference to the agency's chosen technique, only remanding a case if that technique is so marred that the Secretary's finding is arbitrary or of such a nature that it could not be based on 'substantial evidence.'" *United Glass & Ceramic Workers of North America v. Marshall,* 584 F.2d 398, 405 (D.C. Cir. 1978). This is not apparent in the present action. The Department's findings are not arbitrary; they are supported by substantial evidence on the record. Accordingly, the Department's determination must be affirmed and judgment entered in defendant's favor.

---

[13] *See id.* at 35–36.