**FORMER EMPLOYEES OF DIGITAL EQUIPMENT CORPORATION, Plaintiffs,**

v.

**UNITED STATES SECRETARY OF LABOR, Defendant.**

Slip Op. 96–136.
Court No. 94–07–00404.

United States Court of International Trade.

Aug. 13, 1996.

Barnes, Richardson & Colburn (Christopher E. Pey), New York City, for plaintiffs.

Frank W. Hunger, Assistant Attorney General of the United States; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (Randi–Sue Rimerman), Annaliese Impink, Office of the Solicitor, Washington, DC, United States Department of Labor, of counsel, for defendant.

## OPINION

CARMAN, Judge:

Plaintiffs challenge the determination by the United States Department of Labor (Labor) that plaintiffs are ineligible to apply for adjustment assistance for workers under 19 U.S.C. § 2272 (1988 & Supp. V 1993). This Court has jurisdiction pursuant to 28 U.S.C. § 1581(d)(1) (1988) and, for the reasons which follow, enters judgment for defendant.

## BACKGROUND

Digital Equipment Corporation (Digital) is a large multi-plant conglomerate operating several plants throughout the United States. The subject firm in this action is the facility in Roxbury, Massachusetts—known as the Boston or Roxbury plant—which manufactured various computer products including video, keyboards, small computer systems, and cable assemblies. The Roxbury plant produced mainly the LK201 keyboard and cable assemblies used internally by other Digital facilities. All production on the LK201 keyboards at the plant ceased in March 1992. The workers who were not laid off at that time were transferred to the production of cable assemblies at the plant. Subsequently, cable assemblies were discontinued in 1993 as an end-of-life item. Although the plant was officially closed in December 1992, phase-down activities extended to mid–1993, and all other production at the Roxbury plant was either moved to other corporate domestic plants or discontinued.

On November 15, 1993, several former employees of the Roxbury plant petitioned Labor for trade adjustment assistance on behalf of workers at the plant. The petition alleged that beginning in 1991 approximately 200 to 300 keyboard manufacturing workers were separated due to increased imports. The petition further alleged that beginning in 1993 the same number of cable sub-assembly workers were separated due to increased imports.

In response to plaintiffs' petition, Labor initiated an investigation to determine whether plaintiffs were eligible for certification for trade adjustment assistance. After conducting its investigation, Labor found: (1) em-

ployment at the firm declined or threatened to decline during the relevant period; (2) sales at the firm declined significantly; and (3) production at the firm declined significantly. R. at 29. Labor concluded, however, that plaintiffs were ineligible for certification. *Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance, TA–W–29,304; Digital Equipment Corp., Roxbury, MA,* 59 Fed.Reg. 12,983 (Dep't Labor 1994) (*Negative Determination*). Labor found plaintiffs did not satisfy one of the three criteria necessary to be eligible for certification, namely a showing "[t]hat increases of imports of articles like or directly competitive with articles produced by the firm or appropriate subdivision have contributed importantly to the separations, or threat thereof, and to the absolute decline in sales or production." *Id.* Specifically, Labor concluded "[a]ny separations at Digital Equipment Corp., Roxbury, MA were due to a corporate decision to cease operations at that facility and outsource production to other domestic companies." *Id.*

On March 31, 1994, plaintiffs requested Labor reconsider its negative determination, because certain "facts and circumstances ... were either in error, missing, or not clearly presented in the original, hastily filed petition." R. at 44 (*Application for Reconsideration*). The *Application for Reconsideration* provided additional information on the number and types of workers allegedly affected by increased imports as well as an expanded breakout of the products involved. Additionally, plaintiffs retracted the allegation in their original petition that cable subassemblies were one of the products harmed by imports and claimed keyboards were the only product impacted by increased imports. The *Application for Reconsideration* also set forth a detailed description of plaintiffs' reasons for believing increased imports caused a decline in the sales or production of keyboards at Digital. In response, Labor undertook further investigation, which included telephone conferences with the former plant manager of the Roxbury plant, Digital's keyboard product manager, and a senior legal assistant at Digital.

On May 20, 1994, Labor published its denial of plaintiffs' request for reconsideration:

The findings show that all production on the LK201 keyboards ceased in March, 1992 and the plant closed in December 1992. Cable assemblies were then produced but were discontinued in 1993 as an end-of-life item. All other production at Roxbury was either moved to other corporate domestic plants or discontinued. These events would not provide a basis a [sic] group certification.

The Department's denial was based on the fact that the "contributed importantly" test of the Worker Group Eligibility Requirements of the Trade Act was not met. The findings show that a corporate decision was made to cease operations at Roxbury and outsource production for a newer generation of keyboards to other domestic companies.

Neither a domestic transfer nor technological unemployment would form a basis for a worker group certification. Also, the allegation that a domestic vendor is currently importing keyboards for Digital would not provide a basis for certifying keyboard workers laid of [sic] in March, 1992. Section 223(b)(1) of the Trade Act does not permit the Department to certify workers laid off more than one year prior to the date of the petition, which in this case is November 15, 1993.

*Digital Equipment Corp., Roxbury, Massachusetts; Negative Determination Regarding Application for Reconsideration,* 59 Fed. Reg. 26,518 (Dep't Labor 1994) (*Reconsideration Notice*).

## CONTENTIONS OF THE PARTIES

Plaintiffs contend Labor's decisions denying certification were based on an erroneous interpretation of plaintiffs' claim, and further that Labor "misconstrued what evidence it did have, failed to conduct an adequate investigation, and ignored completely plaintiffs' allegations that the keyboards produced at the Roxbury plant were replaced with keyboards manufactured in Mexico." (Mem. in Supp. of Pls.' Mot. for J. on the Agency R. (Pls.' Br.) at 6.) First, plaintiffs argue the *Negative Determination* "lacks any type of

reasoned analysis, other than that keyboards were outsourced to 'other domestic companies,'" and begs the question by stating the Roxbury plant was closed due to a "'corporate decision.'" (*Id.* at 7.) There is no evidence, plaintiffs claim, that Labor considered whether the production outsourced to other domestic companies remained in the United States or went elsewhere.

Second, plaintiffs contend Labor erroneously believed plaintiffs were requesting certification for those workers terminated just before keyboard production shut down in March 1992. Plaintiffs argue they never made such a claim. Because workers laid off more than one year prior to the date of the petition cannot be certified, plaintiffs contend this misconception led Labor to wrongly conclude plaintiffs could not be certified.

Third, plaintiffs insist "the fact that at the time their employment was terminated plaintiffs were no longer making the product that was replaced by imports is not in itself a proper basis for denial of certification." (*Id.* at 9 (citing *Former Employees of General Elec. Corp. v. United States Dep't of Labor,* 14 CIT 608, 1990 WL 129488 (1990)).) Plaintiffs argue that under *Former Employees of GE,* "production workers who continue working well after termination of production of the product affected by increased imports can qualify for adjustment assistance." (*Id.* at 10 (citation omitted).)

Fourth, plaintiffs assert Labor's finding that plaintiffs' jobs were lost due to technological obsolescence is completely erroneous. The only evidence of obsolescence, plaintiffs suggest, pertains to cable assemblies that were terminated as end-of-life. If this is the basis for Labor's denial of certification, plaintiffs continue, "it is erroneous because ... plaintiffs have always claimed that they lost their jobs primarily due to keyboard imports, not due to the end of production of cable assemblies." (*Id.* at 11.) Finally, plaintiffs contend Labor's investigation was "completely inadequate" as the agency never questioned or corroborated Digital's answers to Labor's questionnaire.

Labor rejects plaintiffs' arguments and responds the appropriate inquiry is whether an increase in imports of an article like or directly competitive with an article produced by the separated workers *at the time of* their separation contributed importantly to that separation. (Def.'s Mem. in Opp'n to Pls.' Mot. for J. Upon the Agency R. at 10.) At the time of their separations, Labor contends, plaintiffs were engaged in the manufacture of cable assemblies—not keyboards. Accordingly, Labor asserts it correctly investigated whether the termination of cable assembly production at the Roxbury plant was due to an increase in cable assembly imports. Labor argues substantial evidence reveals that cable assemblies were ultimately terminated as an end-of-life item. "Because there was no evidence that plaintiffs lost their jobs due to increased competition from imported cable assemblies, the Secretary appropriately concluded that plaintiffs' separations were due to a corporate decision to cease operations" at the Roxbury plant. (*Id.* at 9–10.)

Labor argues plaintiffs' allegation that Digital's keyboard production was replaced by imports is irrelevant.[1] Labor contends *Former Employees of GE,* and another worker adjustment assistance case, *Paden v. United States Dep't of Labor,* 562 F.2d 470 (7th Cir.1977), teach "that certification should be denied if at the time of their separation the petitioning workers are engaged in the production of a different product than the product replaced by imports, and the production of that different product ends for a reason other than an increase in import competition." (*Id.* at 12–13.) Because plaintiffs were engaged in the production of cable assemblies and not keyboards at the time of their separation, Labor argues, the agency "correctly investigated whether the termination of cable assembly production at the

---

**1.** As to plaintiffs' second argument, Labor contends plaintiffs misread the *Reconsideration Notice* in arguing Labor erroneously believed plaintiffs were seeking certification for workers terminated at the time keyboard production was shut down. Labor insists that when read in the context of the entire decision and in conjunction with the agency record, the agency correctly concluded an investigation concerning the replacement of keyboards with imports was unnecessary as those workers separated when the production of keyboards ceased were ineligible for assistance pursuant to 19 U.S.C. § 2273(b).

Boston plant was due to an increase in cable assembly imports." (*Id.* at 10–11.)

Finally, Labor rejects plaintiffs arguments impugning the adequacy of the agency's investigation. The Secretary

> contacted Digital personnel and accepted as credible their explanation that cable assemblies were ultimately discontinued as an end-of-life item. The information relied upon by the Secretary came in part from the former plant manager of the Boston plant, an individual who was in a position to know the reason for cable assembly production termination and to be impartial.
>
> Nothing in the administrative record of the investigation contradicts this finding. In fact, plaintiffs concede that substantial evidence in the record exists to support Labor's finding that the production of cable assemblies was terminated due to technical obsolescence.

(*Id.* at 13–14 (citing Pls.' Br. at 11).)

## STANDARD OF REVIEW

■ A determination by Labor denying certification of eligibility for trade adjustment assistance benefits will be upheld if it is supported by substantial evidence on the record and is otherwise in accordance with law. *See Woodrum v. Donovan,* 5 CIT 191, 193, 564 F.Supp. 826, 828 (1983), *aff'd,* 2 Fed.Cir. (T) 82, 737 F.2d 1575 (1984). Labor's findings of fact are conclusive if supported by substantial evidence. 19 U.S.C. § 2395(b) (1988). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986), *aff'd,* 5 Fed.Cir. (T) 77, 810 F.2d 1137 (1987) (citations omitted).

## DISCUSSION

To certify workers as eligible to apply for trade adjustment assistance benefits, Labor must determine the workers meet the following three criteria:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272(a) (1988 & Supp. V 1993). There is no dispute plaintiffs in this action satisfied the first two criteria. The issue before the Court is whether Labor's determination that plaintiffs were ineligible for certification because they failed to satisfy the third criterion is based on substantial evidence on the record and is otherwise in accordance with law.

■ Labor investigated both keyboard and cable assembly production at the Roxbury plant to determine if increased imports had any impact on the sales and production of these products and plaintiffs' subsequent job separations.[2] *See* R. at 14, 18. Labor found cable assemblies were discontinued as an end of life item. *Reconsideration Notice,* 59 Fed.Reg. at 26,518. As to keyboard production, Labor concluded, "a corporate decision was made to cease operations at Roxbury and outsource production for a newer generation of keyboards to other domestic companies." *Id.* Evidence on the record supports these findings:

> As Digital's overall business strategy changed, the products at the Boston Plant were no longer part of this strategy. Manufacture of the products at this plant was not cost competitive so management decided to outsource production of these products to other U.S. companies. Manufacture of the keyboard ... was phased out

2. In their original petition, plaintiffs alleged increased imports hurt the sales or production of both keyboard manufacturing and cable sub-assembly production. In their *Application for Re-* *consideration,* however, plaintiffs retracted the allegation concerning cable sub-assembly production and only alleged keyboard sales or production were harmed by increased imports.

as Digital moved to a new generation of systems. Digital began purchasing these products from other U.S. vendors. The cable business never took hold at Boston, and ... this product was end of life— discontinued. Any other work that was performed at the Boston Plant was either moved to another plant within the U.S., or discontinued.

R. at 19 (quotations omitted). Labor concluded "[n]either a domestic transfer nor technological unemployment would form a basis for a worker group certification." *Reconsideration Notice*, 59 Fed.Reg. at 26,518. There is legal support for Labor's reasoning that a domestic transfer of production would not form a basis for certification under the facts of this case, *see Former Employees of Baker Perkins v. United States*, 13 CIT 632, 635–36, 1989 WL 85597 (1989), and evidence reveals a domestic transfer of production occurred in this case. *See* R. at 19. Additionally, Labor's conclusion that technological unemployment alone would not form a basis for certification is in accord with precedent. *See Miller v. Donovan*, 9 CIT 473, 480, 620 F.Supp. 712, 719 (1985) (Re, C.J.) ("The [statute] does not extend benefits to those whose place of employment is closed because of technological obsolescence.") (citation omitted). Accordingly, Labor's determination that increases of imports did not "contribute[ ] importantly" to plaintiffs' separations is based on substantial evidence and is otherwise in accordance with law.[3]

■■■ Plaintiffs' attacks on the adequacy of Labor's investigation also lack merit. The record indicates Labor officials held telephone conferences with a senior legal assistant at Digital and other Roxbury plant managers, received correspondence from Digital in response to an information request from Labor, and prepared an "Investigative Report" summarizing the findings of its investigation, which included a review of relevant import data in the official trade statistics. "It is well-settled law that the nature and extent of an investigation are matters resting within the sound discretion of administrative

officials," *Former Employees of VTC Inc. v. Reich*, 17 CIT 1433, 1437, 1993 WL 541685 (1993) (citation omitted), and the "Court must give substantial deference to the method chosen by the agency to fulfill its statutory responsibility," *Former Employees of CSX Oil & Gas Corp. v. United States*, 13 CIT 645, 651, 720 F.Supp. 1002, 1008 (1989) (citation omitted). The Court finds no fault with the adequacy of Labor's investigation in this case.

## CONCLUSION

The Court holds Labor's decision to deny plaintiffs' eligibility to apply for trade adjustment assistance and Labor's denial of plaintiffs' application for reconsideration are based on substantial evidence and are otherwise in accordance with law. Plaintiffs' motion for judgment on the agency record is denied.

## JUDGMENT

This case having been duly submitted for decision and this Court, after due deliberation, having rendered a decision herein; now, in conformity with said decision it is hereby

**ORDERED** plaintiffs' motion for judgment on the agency record is denied, and it is further

**ORDERED** Labor's decisions in *Determinations Regarding Eligibility To Apply for Worker Adjustment Assistance and NAFTA Transitional Adjustment Assistance, TA–W–29,304; Digital Equipment Corp., Roxbury, MA*, 59 Fed.Reg. 12,983 (Dep't Labor 1994) and *Digital Equipment Corp., Roxbury, Massachusetts; Negative Determination Regarding Application for Reconsideration*, 59 Fed.Reg. 26,518 (Dep't Labor 1994) are sustained, and it is further

**ORDERED** this action is dismissed.

---

3. Whether at the time of their separations plaintiffs were producing cable assemblies, as defendant argues, or engaged in phase-out activities related to keyboard production, as plaintiffs ar-

gue, need not be decided because under either scenario, Labor found increased imports did not "contribute[ ] importantly" to plaintiffs' separations.