Slip Op. 99-48

# UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: Judge Judith M. Barzilay**

-------------------------------------------------------  x

FORMER EMPLOYEES OF CHAMPION  :
AVIATION PRODUCTS,

                              :

        Plaintiffs,                        Court No.  98-02-00299

                              :                  **Public Version**

        v.

                              :

HERMAN, SECRETARY OF LABOR,

                              :

        Defendant.

-------------------------------------------------------  x

[Remanded to the Secretary of Labor for additional consideration.]

Decided: June 4, 1999

Dewey Ballantine, L.L.P. (John A. Ragosta, Bradford L. Ward, Michael R. Geroe, David A. Bentley), for Plaintiffs.

David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Katherine A. Barski), Scott Glabman, Attorney, Office of the Solicitor, United States Department of Labor, of counsel, for Defendant.

### MEMORANDUM AND ORDER

**BARZILAY, J.**

Plaintiffs applied for trade adjustment assistance on October 22, 1997, by filing a petition with the Secretary of Labor ("Secretary") and the Commonwealth of Pennsylvania.[1]  Following an

---

[1]  Plaintiffs followed the dual track set forth in the trade adjustment assistance statutes, whereby they filed for an initial determination of eligibility for trade adjustment assistance under section 250 of the Trade Act of 1974, as amended by the North American Free Trade Agreement Transitional Adjustment Assistance Act ("NAFTA-TAA"), with the state in which the employees are located and for trade adjustment assistance under the Trade Act of 1974 ("TAA") with the Secretary.  Pennsylvania forwarded its negative recommendation and its preliminary findings to the Department of Labor ("Labor") for review.  A Labor investigator conducted a survey of Champion's customers for purposes of the TAA petition, AR 10-15, and prepared reports for both the TAA petition and the NAFTA-TAA petition.  AR 20-22, 56-57.  The Secretary denied both the NAFTA-TAA request and the TAA request.  The statute vests responsibility for the determinations in the Secretary, so for purposes of the opinion the terms Secretary and Labor are

investigation, the Secretary denied Plaintiffs' request.  63 Fed. Reg. 577, 578 (Jan. 6, 1998).  By letter

dated January 6, 1998, Plaintiffs requested reconsideration of the negative determination, which the

Secretary also denied.  63 Fed. Reg. 6208-09 (Feb. 6, 1998).  Plaintiffs instituted this case by letter dated

February 9, 1998, to challenge the Secretary of Labor's denial of Trade Adjustment Assistance under

section 221 of the Trade Act of 1974 (19 U.S.C. § 2271 (1994)) and under section 250 of the Trade Act

of 1974, as amended by the NAFTA Transitional Adjustment Assistance Act (19 U.S.C. § 2331 (1994)).

Only the NAFTA-TAA request is before the Court.  *See Pl's Memo.*, n. 3.  Plaintiffs' letter was deemed

to satisfy the requirements under 28 U.S.C. § 1581(d) (1994) for a summons and complaint.  The Court

has jurisdiction under 28 U.S.C. § 1581(d)(1) (1994) and 19 U.S.C. § 2395(a) (1994).

## I.  BACKGROUND

Plaintiffs are former employees of Champion Aviation Products, a division of Cooper Industries

("Cooper"), who worked at a facility located in Pennsylvania ("Pennsylvania facility") which produced

certain finished products and components for the aviation industry.[2]  In this action Plaintiffs allege that

they are entitled to trade adjustment assistance because they lost their jobs in a two-step shift, that is,

their plant was closed because a plant owned by Cooper in Tennessee absorbed their production while

a portion of the Tennessee production shifted to a Cooper facility in Mexico. [


].[3]  AR at 36.  The finished products manufactured at Cooper's Pennsylvania

used interchangeably.

[2]  The plant is located in Weatherly, Pennsylvania.

[3]  [

facility in 1998 were [                                                        ].  AR at 43.  The finished products

manufactured at Cooper's Tennessee facility in 1998 were automotive lamps and the record does not

reveal what if anything else was produced there at the time.

      Although the record does not indicate this affirmatively, Defendant maintains that at the end

of January 1998 the Pennsylvania facility was operating at minimal capacity and was closed.  *Def's*

*Memo* at 4.  [


               ].[4]  AR 36 [

                     ].[5]  [

                         ].  AR at 5, 36.  Forty-seven workers,

Plaintiffs in this case, were separated because of the closing of the Pennsylvania facility.  AR 36.

## II.  DISCUSSION

*A.  Standard of Review*

      An adjustment assistance case must be decided on the basis of the administrative record before

the court.  *See* 28 U.S.C. § 2640(c); *International Union v. Reich*, 20 F. Supp 2d 1288, 1292 (CIT

1998).  A determination by Labor will be upheld if it is supported by substantial evidence and is

otherwise in accordance with law.  *Woodrum v. Donovan*, 5 CIT 191, 192, 564 F. Supp. 826, 828 (CIT

1983), *aff'd* 737 F.2d 1575 (Fed. Cir. 1984).  Substantial evidence must be more than a "mere scintilla,"

---

        ].  AR at 42.  The Sparta facility reportedly is no longer owned by Cooper
Industries and is now part of the lighting products division of Federal Mogul Corporation.

   [4] [

              ].

   [5] [

         ].

it must be "enough reasonably to support a conclusion." *Ceramerica Regiomontana, S.A. v. United States*, 636 F. Supp. 961, 966 (CIT 1986). The court may remand findings of fact made by the Secretary "for good cause shown" if the record is not complete and supported by substantial evidence. 19 U.S.C. § 2395(b) (1994).

With respect to the conduct of the investigation, "while Labor has a duty to investigate, 'the nature and extent of the investigation are matters resting properly within the sound discretion of the administrative officials.'" *Former Employees of CSX Oil and Gas Corp. v. United States*, 720 F. Supp. 1002, 1008 (CIT 1989) (quoting Cherlin v. Donovan, 585 F. Supp. 644, 647 (CIT 1984)). However, "rulings made on the basis of those findings [must] be in accordance with the statute and not be arbitrary and capricious, and for this purpose the law requires a showing of reasoned analysis." *International Union v. Marshall*, 584 F.2d 390, 396 n.26 (D.C. Cir. 1978). One indication of the unreasonableness of the agency's action is that the agency has entirely failed to consider an important aspect of the problem. *Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.*, 463 U.S. 29, 43 (1983).

Plaintiffs request the Court to declare the Secretary's interpretation of the statute unreasonable and to enjoin the Secretary to certify Plaintiffs as eligible for trade adjustment assistance. In the alternative, Plaintiffs request a remand to the Secretary to supplement the investigative record in several areas. First, Plaintiffs argue that the Secretary's interpretation of the NAFTA-TAA provision is unreasonable because it relies exclusively on procedures used to implement the TAA. This approach, Plaintiffs maintain, fails to account for congressional intent to expand trade adjustment assistance in the North American Free Trade Agreement Implementation Act by providing for an additional reason for granting assistance -- a shift in production to Canada or Mexico. 19 U.S.C. § 2331(a)(1)(B). Plaintiffs posit that the Secretary's analytical approach is flawed, and thus unreasonable, because it

relies on product lines, without examining factors of production, land, labor and capital, to reach a decision on whether certain facilities should be considered part of the same subdivision and on whether like or directly competitive articles shifted. Without such an analysis, Plaintiffs claim that a shift in production is not observable. Plaintiffs argue that an analysis that does not account for situations where a shift in production occurs in more than one step is unreasonable.

In the alternative, Plaintiffs argue that the negative determination was not supported by substantial evidence because the investigation did not develop an adequate record to support the decision to deny adjustment assistance. In support of this argument, Plaintiffs point to the interview with the plant manager at the Pennsylvania facility as constituting the only evidence on whether a shift in production had occurred. [

], but the record does not state the type or amount of equipment that moved. Additionally, Plaintiffs argue that the record lacks any evidence indicating why the Pennsylvania and Tennessee facilities do not constitute the appropriate subdivision. Finally, Plaintiffs maintain that the Secretary's denial of their request for reconsideration did not provide a reasoned explanation because it relied solely on the fact that workers at the Tennessee facility had not filed a petition for adjustment assistance.

This is a case of first impression. While the court has decided cases involving petitions for NAFTA-TAA, none of those decisions rested on the statutory provision at issue. *See International Union v. Reich*, 22 CIT ___, 20 F. Supp. 2d 1288 (1998); *Former Employees of Digital Equipment Corp. v. United States*, 20 CIT ___, 937 F. Supp. 917 (1996); *Former Employees of Roeder Hydraulics, Inc. v. United States*, 19 CIT 825 (1995). The NAFTA-TAA provision before the Court governs shifts in production and requires the Secretary to certify workers as eligible for assistance if "there has been a shift in production by such workers' firm or subdivision to Mexico or Canada of articles like or

directly competitive with articles which are produced by the firm or subdivision." 19 U.S.C. § 2331(a)(1)(B) (1994).

Obviously, a critical factor in the analysis is the Secretary's determination of what constitutes the appropriate subdivision. 19 U.S.C. § 2331(a)(1) (1994). Under the case law governing TAA cases involving increased imports it is a "well-settled principle that determinations of what constitutes an appropriate firm or subdivision must be made along product lines." *See Abbott v. Donovan*, 6 CIT 92, 99, 570 F. Supp. 41, 48 (1983). Here, the Secretary relied on such a product line analysis, alone, in reaching her conclusions. But it is clear from the legislative history that Congress intended to expand the scope of worker coverage under the NAFTA-TAA provisions. Senator Roth explained in introducing the bill:

> The legislation I am introducing builds on TAA and will ensure that workers who lose their jobs because of freer trade with Mexico will be eligible for the full range of TAA benefits. It does this by expanding the coverage of such workers to include workers who are hurt because of United States production shifts to Mexico.

139 Cong. Rec. S5655, 5656 (daily ed. May 6, 1993) (statement of Sen. Roth). Additionally, it is evident that the law is and was intended to be remedial in nature, not only in the sense of providing assistance to displaced workers but to correct perceived deficiencies in prior TAA cases. *See* Senate Proceedings and Debates of the 103rd Congress, First Session, 139 Cong. Rec. S16092-01, S16107 (Nov. 18, 1993) ("[T]he new program is designed to remedy what has been identified as one of the shortcomings of the current TAA program."). That trade adjustment assistance is remedial was also noted by the Court of Appeals for the Sixth Circuit in *Morristown Magnavox Former Employees v. Marshall*, 671 F.2d 194, 197 (6th Cir. 1982). Moreover, use of the term "appropriate" suggests a degree of flexibility, particularly in light of the remedial nature of the statute. When interpreting remedial

legislation, the court is to construe it broadly to effectuate its purpose. *See Gardner v. Brown*, 5 F.3d 1456, 1463 (Fed. Cir. 1993) (citing Tcherepnin v. Knight, 389 U.S. 332, 336 (1967)). In the context of TAA cases, the court has stated that the Secretary must "'choose a subdivision that best effectuates the purpose of the Trade Act in light of the circumstances of the individual case.'" *International Union v. Reich*, 20 F. Supp.2d 1288, 1293 (CIT 1998) (quoting Int'l Union v. Marshall, 584 F.2d 390, 397 (D.C.Cir. 1978)). Reliance by the Secretary on product lines alone to determine what constitutes the appropriate subdivision in a case involving a shift in production, particularly when the shift may have occurred in more than one step, does not effectuate the expressed desire of Congress. Although it may be helpful for the Secretary to examine shifts in land, labor and capital to arrive at a determination of what constitutes the appropriate subdivision, the agency is in a better position than the Court to develop a methodology.[6] However, in determining the appropriate subdivision the Secretary must take into consideration that there may have been a two-step shift in production.

Because the record is incomplete, the Court does not find it appropriate, at this point, to declare the Secretary's negative determination unreasonable, and thus, to enjoin her to certify Plaintiffs as eligible for assistance. Several inadequacies exist in the record that, aside from the Secretary's interpretation of appropriate subdivision, require remand. At this stage, because the record lacks adequate factual development and because the legal basis of the Secretary's decision denying reconsideration is not clear, remand will afford the Secretary the opportunity to reconsider her determinations following further fact finding. Once the record is more developed, should the need arise,

---

[6] On this point, the Court notes that the proposed regulation defining a shift in production provides little guidance. *See Trade Adjustment Assistance for Workers; Amendment of Regulations*, 60 Fed. Reg. 3472, 3480 (Jan. 17, 1995). The language of the proposed regulation varies only slightly from the language of the statute and gives no indication of a methodology. It seems inadequate given the clear intent of the new statutory provision to protect workers who lose their jobs because of production shifts.

 the Court will be in a better position to evaluate the reasonableness of the Secretary's actions.

The court grants the Department considerable discretion in the conduct of its investigations. *See Former Employees of Komatsu Dresser v. United States Secretary of Labor*, 16 CIT 300, 303 (1992). But, "where [the Department] conducts an inadequate investigation by failing to make a reasonable inquiry, the court has good cause to remand the case . . . to take further evidence." *Id.* and cases cited therein. The Court finds that the Department's investigation concerning whether there was a shift in production to Mexico was not adequate and thus, good cause exists to remand this case to the Secretary. The record below is deficient in a number of ways.

In *Former Employees of Linden Apparel Corp. v. United States*, 13 CIT 467, 715 F. Supp. 378 (1989), the court explained "[i]f the company under investigation is part of a larger corporate entity, the Secretary has a *duty* of providing a description of the organizational structure and of inquiring into how the subject company fits into the organization." *Id.* at 470, 715 F. Supp. 381 (emphasis added). Here, the Department failed to describe the relationship between the Pennsylvania facility and the other facilities within Cooper Industries. As the court stated in *International Union*, "'[t]he mechanical adoption of the plant as the appropriate subdivision without reasoned analysis is improper.'" *Id.* at 1293 (quoting Lloyd v. United States Dep't of Labor, 637 F.2d 1267, 1275 (9th Cir. 1980). Moreover, "DOL must analyze the underlying facts and explain why, reasonably based upon those facts, it would not include another facility within what the agency determines to be the 'appropriate subdivision.'" *Id.* at 1293-94. Further development of the record is needed on Cooper's organizational structure, and the Pennsylvania facility's place within it. There is nothing in the record to support the Secretary's determinations on what constitutes the appropriate product line.[7] Without such knowledge it is not

---

[7] Plaintiffs allege that the record shows Cooper produced [                    ], AR 42, [
                                                                              ].

possible to determine whether substantial evidence exists to support the Secretary's designation of the Pennsylvania facility as the appropriate subdivision.

In addition to the lack of record evidence to support the determination that the Pennsylvania facility alone should be considered as the appropriate subdivision, an interview with the Pennsylvania facility's plant manager constitutes the only source of record evidence supporting the Secretary's negative determination on the shift in production issue. This interview is not sufficient evidence on which to base a determination about whether a shift in production has occurred. *See e.g., Former Employees of Komatsu Dresser v. United States Secretary of Labor*, 16 CIT 300, 304 (1992) (finding customer surveys useless under the circumstances). Further, the Department failed to ascertain the amounts and types of equipment Champion moved from the Pennsylvania facility to Mexico. Such information is relevant in evaluating whether a shift in production may have occurred directly from Pennsylvania to Mexico. At the least, the absence of any evidence on the record beyond noting a shift of some equipment demonstrates the inadequacy of the investigation and suggests the need for further development of the record.

Finally, the Court finds that the Department did not provide Plaintiffs with a reasoned explanation for denying their claims for NAFTA-TAA. Plaintiffs asserted in their letter requesting reconsideration of the negative determination that their separation occurred because space and employees at the Mexican facility enabled a two-step shift in production. The Department's sole stated reason for denying consideration of the NAFTA-TAA claim was that workers at the Tennessee facility had not filed for adjustment assistance. AR at 32. The Department's statement in the notice of denial is not a reasoned explanation to which the Plaintiffs are entitled. *See International Union v. Reich*, 20 F. Supp.2d 1288, 1293 (CIT 1998) (citing Int'l Union v. Marshall, 584 F.2d 390, 396 (D.C.Cir. 1978)).

### III.  CONCLUSION

For the reasons discussed herein, the Court finds that the Secretary conducted an inadequate investigation as to whether Plaintiffs are entitled to NAFTA-TAA because of an alleged shift in production to Mexico.  The Secretary's determination of the appropriate subdivision of Plaintiffs' firm is not supported by substantial evidence.  Additionally, the Secretary's determination that a shift in production had not occurred is not supported by substantial evidence.  Accordingly, it is hereby

ORDERED that this case is remanded to the Secretary to make additional findings consistent with the reasoning in this opinion, including but not limited to: determining what the appropriate subdivision is in light of the purposes of NAFTA-TAA and accounting for the possibility that a two-step shift in production may have occurred; providing a more detailed explanation of whether the articles produced at the Pennsylvania facility are like or directly competitive with the articles produced in Mexico; describing the types and amounts of equipment that moved to Mexico from Pennsylvania; and it is further

ORDERED that the Secretary shall reevaluate whether Plaintiffs are eligible for NAFTA-TAA under 19 U.S.C. § 2331(a)(1)(B) in the light of any new evidence and of the directives of the Court and issue a final determination within 45 days after the date of this opinion, providing the Court a copy of that determination within five days of its issuance; and it is further

ORDERED that any comments or responses by the parties to the remand results are due on or before 20 days from the date of the Secretary's final determination and are limited to 20 pages, any rebuttal comments are due 20 days thereafter and are limited to 10 pages.

Dated: _____, 1999                    _____
New York, N.Y.                                             Judith M. Barzilay, Judge